IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

POSTNET INTERNATIONAL FRANCHISE
CORPORATION,

       Plaintiff,

v.

AMERCIS INTERNATIONAL, INC.,
VICTORIA KOPUNEK, and THOMAS
KOPUNEK,

       Defendants.

## COMPLAINT

Plaintiff PostNet International Franchise Corporation ("PostNet") alleges the following in support of its Complaint:

### PARTIES

1. Plaintiff is a Nevada corporation with its principal place of business in Denver, Colorado. Plaintiff is a franchisor of PostNet retail stores that offer, among other products and services, photocopying, printing, parcel shipping, packaging, private mailbox rentals, overnight air express, facsimile, and notary services.

2. Upon information and belief, Defendant Amercis International, Inc. ("Amercis") is a Delaware corporation with its principal place of business in Rehoboth Beach, Delaware. Amercis is a PostNet franchisee and operates a PostNet retail store located in Rehoboth Beach, Delaware.

3. Upon information and belief, Defendant Victoria Kopunek ("Mrs. Kopunek") is a resident of Delaware and is the Vice President of Amercis. Mrs. Kopunek guaranteed all obligations in connection with its PostNet franchise located in Rehoboth Beach, Delaware.

4. Upon information and belief, Defendant Thomas Kopunek ("Mr. Kopunek") is a resident of Delaware and is the President of Amercis. Mr. Kopunek guaranteed all obligations in connection with its PostNet franchise located in Rehoboth Beach, Delaware. (Amercis, Mrs. Kopunek and Mr. Kopunek are collectively referred to herein as "Defendants").

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under federal law, including, but not limited to, the Lanham Act, 15 U.S.C. § 1111 *et seq*.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it involves citizens of different states, and the harm to Plaintiff if the injunction is not granted exceeds $75,000, exclusive of interest and costs.

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

8. The franchise agreement (the "Franchise Agreement") that is the subject of this suit contains a choice of venue provision selecting the judicial district in which Plaintiff has its principal place of business as the proper venue for claims arising out of or related to the Franchise Agreement. Moreover, Defendants waived all questions of venue for claims arising out of or related to the Franchise Agreement.

9.     Defendants have waived all questions of personal jurisdiction for claims arising out of or related to the Franchise Agreement.

## FACTS

**A.     The PostNet System**

10.    Plaintiff is a franchisor of retail stores that offer, among other products and services, photocopying, printing, parcel shipping, packaging, private mailbox rentals, overnight air express, facsimile, and notary services. Plaintiff has the exclusive right to license the distinctive PostNet system relating to the establishment and operation of PostNet retail stores (the "PostNet System"). The distinguishing characteristics of the PostNet System include a distinctive design and layout, and training, management, and promotional assistance, in connection with the establishment and ongoing operation of PostNet retail stores. Plaintiff identifies the PostNet System by means of certain trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "PostNet" (collectively, the "PostNet Marks").

11.    Plaintiff owns and has registered the PostNet Marks with the United States Patent and Trademark Office, and has given notice to the public of the registration of the PostNet Marks as provided in 15 U.S.C. § 1111.

12.    Plaintiff has granted licenses to various franchisees for the operation of PostNet retail stores using the PostNet Marks. Such franchisees have certain, but limited, rights to use the PostNet Marks in connection with their operation of PostNet retail stores.

13.    Through its PostNet System, Plaintiff markets, promotes, and provides services to its franchisees. The PostNet Marks are valid and have developed a secondary meaning within

the trade and public in favor of those who have used and now use the Marks to identify the quality of the services of the PostNet System.

14. Plaintiff has made significant financial investments to market and promote the PostNet brand. During the past two years, Plaintiff spent approximately $1.5 million on national campaigning and advertising activities.

15. Plaintiff has invested substantial effort to develop goodwill in its trademarks to cause customers to recognize the PostNet Marks as distinctly designating PostNet goods and services and as originating with PostNet. The value of the goodwill developed in the PostNet Marks does not admit of precise monetary calculation.

16. Plaintiff has exercised great care in selecting franchisees for the PostNet System, and has made substantial efforts to control the nature and quality of business conducted and goods and services offered under the PostNet Marks.

17. As a result of the care, skill and integrity exercised by Plaintiff in the conduct of its business, the uniformly high and dependable quality of services offered at PostNet retail stores, and the extensive advertising, promotion, sale of products and public acceptance thereof, the PostNet Marks have acquired an excellent reputation and secondary meaning within the trade and public in favor of those who have used and now use the PostNet Marks to identify the quality of the services and products of the PostNet System. The PostNet Marks have acquired an outstanding celebrity and goodwill of great value, which Plaintiff has created and which is fundamental to Plaintiff's operation and business.

### B. Defendants' Franchise Agreement

18. On October 22, 1996, Plaintiff and Amercis entered into the Franchise Agreement, pursuant to which Plaintiff granted Amercis the right to operate a PostNet retail store.

19. On October 22, 1996, Mr. Kopunek, the President of Amercis, entered into a guarantee pursuant to which he guaranteed all obligations in connection with the Franchise Agreement (the "Guarantee"). Mrs. Kopunek, the Vice-President of Amercis, entered into the same Guarantee.

20. Pursuant to the Franchise Agreement, Defendants established and operated a PostNet retail store located at 4590 Highway One, Rehoboth Beach, Delaware.

21. The initial term of the Franchise Agreement was for ten years, and Defendants had an option to renew the franchise for consecutive terms of ten years each, subject to certain terms and conditions.

22. Section 11.7 of the Franchise Agreement sets forth Amercis' unconditional obligation to submit itself to an audit by Plaintiff or its designated agent. It states:

> PostNet or its designated agent shall have the right at all reasonable times to examine and copy, at PostNet's expense, the books, records, accounts, and business tax returns of the Store Owner. PostNet shall also have the right, at any time, to have an independent audit made of the books and records of the Store Owner.[1]

23. Section 13.3 of the Franchise Agreement governs default and termination of the Agreement. It states:

---

[1] The Franchise Agreement defines "Store Owner" as Amercis International, Inc.

> Except as provided in Sections 13.1 and 13.2 hereof, Store Owner shall have thirty days after PostNet provides written notice of termination (in the manner specified in Section 20, hereof) within which to remedy any default hereunder and to provide evidence thereof to PostNet. If any such default is not cured within such time, or such longer period as applicable law may require, this Agreement shall terminate without further notice to Store Owner, effective immediately upon expiration of such period. Store Owner shall be in default hereunder for any failure substantially to comply with any of the requirements imposed by this Agreement, as they may from time to time be supplemented in writing as permitted herein, or to carry out the terms hereof in good faith.

24. Section 14 of the Franchise Agreement sets forth certain obligations on the part of Defendants in the event of a termination or expiration of the Franchise Agreement:

> 14.1  Store Owner shall immediately cease to operate the Center, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of PostNet.[2]
>
> 14.2  Store Owner shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the System; the Proprietary Marks; and all other proprietary marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.
>
> 14.3  Store Owner shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Marks, and Store Owner shall furnish PostNet with evidence satisfactory to PostNet of compliance with this obligation within thirty days after termination or expiration hereof.
>
> . . .
>
> 14.8  Store Owner shall immediately return the Manual and all other documents which contain confidential information relating to the operation of the Center.

25. Section 15.3 of the Franchise Agreement contains Defendants' covenant not to compete in the event of the termination or expiration of the Franchise Agreement. It states:

---

[2]  The Franchise Agreement defines the "Center" as Amercis' PostNet retail store.

6

> Store Owner covenants that it shall not, without PostNet's prior written consent, for a continuous, uninterrupted one year period commencing upon the date of: . . . (c) termination of this Agreement (regardless of the cause for termination); or (d) a final decision of an arbitrator or a court of competent jurisdiction (after all appeals have been taken) . . . with respect to enforcement of this Section 15.3; either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which offers the same or similar products or services as those offered by the Center, and which is located: (i) at the Approved Location;[3] or (ii) within a ten mile radius of the Protected Territory.[4]

26. Section 15.8 of the Franchise Agreement states:

> Store Owner acknowledges that Store Owner's violation of the terms of this Section 15 would result in irreparable injury to PostNet for which no adequate remedy at law may be available, and agrees to pay all court costs and reasonable attorneys' fees incurred by PostNet in obtaining any injunctive or other equitable or legal relief with respect to such conduct or action.

27. Section 23.1 of the Franchise Agreement contains a choice of law provision that states that the Franchise Agreement "shall be interpreted and construed exclusively under the laws of Nevada."

28. Section 23.3 of the Franchise Agreement contains a choice of venue provision that states that "any judicial action brought by PostNet may be brought within the judicial district in which PostNet has its principal place of business."

29. Since May 2005, PostNet's principal place of business has been in Denver, Colorado. Prior to that time, it was in Las Vegas, then, Henderson, Nevada.

---

[3] "Approved Location" refers to the location of Defendants' PostNet retail store at 4590 Highway One, Rehoboth Beach, Delaware.
[4] "Protected Territory" consists of a one-mile radius of the Approved Location.

### C. Defendants' Default And Termination Of The Franchise Agreement

30. On or about October 2005, pursuant to Section 11.7 of the Franchise Agreement, Plaintiff retained an independent audit firm, Royalties, Inc. ("Royalties"), to perform an audit of Defendants' PostNet retail store.

31. Royalties contacted Defendants, and on October 27, 2005, two auditors from Royalties went to Defendants' PostNet retail store to perform an audit.

32. Mr. Kopunek, however, told the auditors that they would not be permitted to perform an audit of the store unless they executed a confidentiality agreement that states, among other things, that "Royalties shall not divulge any information of or pertaining to this Agreement to any person or entity."

33. The confidentiality agreement also states:

> If Royalties divulges any information in breach of this Agreement, Royalties will pay unto Amercis a sum of Twenty Thousand Dollars ($20,000.00) as liquidated damages within fourteen days of said breach, the payment of which shall not preclude Amercis from pursuing any other rights and remedies available in equity or at law.

34. The auditors informed Mr. Kopunek that they would not execute the confidentiality agreement since, among other reasons, it would have prevented the auditors from furnishing the audit results to PostNet. Mr. Kopunek did not permit them to perform an audit.

35. By letter dated November 2, 2005, Brian Spindel, the Executive Vice President of PostNet, sent Defendants a formal notice of default under the Franchise Agreement with a 30-day opportunity to cure the default. Mr. Spindel informed Defendants that their demand that the independent auditors execute a confidentiality agreement prevented Plaintiff from exercising its

right pursuant to Section 11.7 of the Franchise Agreement to perform an audit of Defendants' PostNet retail store and constituted a default.

36. In an effort to avoid having to terminate the Franchise Agreement, by letter dated December 5, 2005, Mr. Spindel agreed that PostNet and Royalties would keep the results of the audit of Defendants' PostNet retail store confidential, and that PostNet would withdraw its notice of default, if Defendants agreed to reschedule the audit and cooperate fully without requiring execution of any confidentiality agreements. Mr. Spindel also extended the termination date under the notice of default to December 8, 2005, and stated that if the parties did not reach a mutually satisfactory resolution by that time, the Franchise Agreement would automatically terminate at the close of business on December 8, 2005.

37. Mr. Kopunek responded by a letter dated December 8, 2005. He stated that Amercis "is willing to let the audit go forward," but offered to permit Plaintiff to audit the store "sometime after March 15, 2006."

38. By letter dated December 9, 2005, Mr. Spindel rejected Mr. Kopunek's offer and questioned why the audit needed to be postponed until March 15, 2006. Mr. Spindel also informed Mr. Kopunek that the cure period under the notice of default had already lapsed, and that the audit issue needed to be resolved by the close of business that very day.

39. By letter dated December 14, 2005, Mr. Spindel gave Defendants formal notice of the termination of the Franchise Agreement for their failure to cure the default and stated that the Agreement would terminate upon receipt of the December 14, 2005 letter sent via facsimile, or close of business on December 15, 2005, whichever came earlier.

40. Notwithstanding the termination of the Franchise Agreement, Defendants continue to operate their business as a PostNet retail store, using the PostNet System and the PostNet Marks in direct violation of the terms of the Franchise Agreement.

41. In addition, to date, Defendants have not furnished Plaintiff with evidence of compliance with their obligation under the Franchise Agreement to cancel any assumed name or equivalent registration which contains the PostNet Marks. Nor have they returned to Plaintiff PostNet's Operating Manual or other documents which contain confidential and proprietary information relating to the operation of the PostNet retail store.

**D.   Arbitration Provision In Franchise Agreement**

42. The Franchise Agreement contains an arbitration clause that generally requires any claim or controversy arising out of, or related to, the Franchise Agreement to be arbitrated. However, Section 23.2 of the Franchise Agreement specifically allows Plaintiff to obtain injunctive relief from this Court to stop Defendants' continuing violation of the Franchise Agreement. By bringing this action for injunctive relief, Plaintiff does not waive its right to require arbitration of any claims for damages that it may have against Defendants.

**COUNT I**
**Federal Trademark Infringement**
**(Section 32 of the Lanham Act)**

43. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

44. Despite the well-known prior statutory and common law rights of Plaintiff in its ownership of the PostNet federally-registered trademarks, Amercis has, without Plaintiff's

authorization, used the PostNet Marks in connection with its continued post-termination promotion, marketing and operation of the formerly franchised retail store.

45. Amercis' unauthorized use of the PostNet Marks constitutes infringement of the proprietary PostNet Marks. Such use is likely to cause confusion, deception or mistake, all in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

46. By reason of Amercis' actions, Plaintiff has been, and will continue to be, seriously and irreparably damaged.

47. Thomas Kopunek and Victoria Kopunek are bound by the Guarantee.

48. Plaintiff has no adequate remedy at law to compensate it for the damage caused by Defendants' actions. Accordingly, Plaintiff is entitled to an injunction enjoining Defendants from infringing on the proprietary PostNet Marks.

## COUNT II
### Federal Unfair Competition
### (Section 43(a) of the Lanham Act)

49. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

50. Amercis has used registered and common law trademarks belonging to Plaintiff in connection with its operation of the formerly franchised store. Such use constitutes false designation of origin and false descriptions and representations which falsely describe and misrepresent Amercis' business activities as being associated with, sponsored by, approved by, licensed by, originating with or connected with the PostNet System and licensed by Plaintiff.

51. Amercis' acts are likely to confuse, mislead or deceive members of the public as to the affiliation of Defendants' retail store and/or cause such persons to believe in error that

11

Defendants have been authorized, sponsored, approved or licensed by Plaintiff, or that it is in some way affiliated with Plaintiff.

52. Amercis' acts constitute false descriptions and false designations of the origin of their goods and have affected interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53. By reason of Amercis' actions, Plaintiff has been, and will continue to be, seriously and irreparably damaged.

54. Thomas Kopunek and Victoria Kopunek were required by the Guarantee to not violate the terms of the Franchise Agreement.

55. Plaintiff has no adequate remedy at law to compensate it for the damage caused by Defendants' actions. Accordingly, Plaintiff is entitled to an injunction enjoining Defendants from further unfair competition by infringing on the proprietary PostNet Marks.

## COUNT III
### Common Law Trademark Infringement

56. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

57. Through its ownership and continuous use of the PostNet Marks, Plaintiff has developed and acquired trademark rights at common law in the PostNet Marks.

58. Amercis' unauthorized use of the common law PostNet Marks in connection with its marketing, promoting and operation of the formerly franchised retail store is likely to cause confusion or to deceive the public and constitutes trademark infringement under the common law of Nevada, as well as the laws of the United States.

59.     By reason of Amercis' actions, Plaintiff has been, and will continue to be, seriously and irreparably damaged.

60.     Thomas Kopunek and Victoria Kopunek are bound by the Guarantee.

61.     Plaintiff has no adequate remedy at law to compensate it for the damage caused by Defendants' actions. Accordingly, Plaintiff is entitled to an injunction enjoining Defendants from infringing on the proprietary PostNet Marks.

## COUNT IV
### Common Law Unfair Competition

62.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

63.     The acts of conduct of Amercis as alleged above constitute unfair competition under Nevada common law.

64.     The acts and conduct of Amercis are likely to cause confusion and mistake among customers and the public as to the origin or association of the goods sold or services provided by Amercis. These acts and conduct are likely to lead the public to conclude incorrectly that the goods or services provided by Amercis originate with, are sponsored by, or are authorized by Plaintiff.

65.     By reason of Amercis' actions, Plaintiff has been, and will continue to be, seriously and irreparably damaged.

66.     Thomas Kopunek and Victoria Kopunek are bound by the Guarantee.

67. Plaintiff has no adequate remedy at law to compensate it for the damage caused by Defendants' actions. Accordingly, Plaintiff is entitled to injunctive relief enjoining such actions in the future.

## COUNT V
### Breach of Contract: Post-Termination Obligations

68. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

69. Amercis breached its post-termination obligations and covenants, as set forth in the Franchise Agreement, by continuing to operate its business as a PostNet retail store using the PostNet Marks notwithstanding the termination of the Franchise Agreement.

70. By reason of Amercis' breach of its post-termination obligations and covenants, Plaintiff has been, and will continue to be, seriously and irreparably damaged.

71. Thomas Kopunek and Victoria Kopunek are bound by the Guarantee.

72. Plaintiff has no adequate remedy at law to compensate it for the damage caused by Defendants' post-termination breach of the Franchise Agreement, and it is therefore entitled to specific performance of the post-termination obligations set forth in the Franchise Agreement.

## COUNT VI
### Conversion

73. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

74. Pursuant to the Franchise Agreement, Plaintiff loaned Amercis certain proprietary information for use in developing and operating its PostNet retail store, including Plaintiff's Operation Manual and related documents.

75. Despite the terms of the Franchise Agreement which require their return, Amercis has failed to return Plaintiff's proprietary information, including Plaintiff's Operation Manual and related documents.

76. Amercis' failure to return Plaintiff's proprietary information constitutes conversion.

77. By reason of Amercis' failure to return Plaintiff's proprietary information, Plaintiff has been, and will continue to be, seriously and irreparably damaged.

78. Thomas Kopunek and Victoria Kopunek are bound by the Guarantee.

79. Plaintiff has no adequate remedy at law to compensate it for the damage caused by Defendants' wrongful conversion of Plaintiff's proprietary information. Plaintiff is entitled to the equitable remedy of injunctive relief requiring Defendants to deliver the proprietary information to Plaintiff, including, but not limited to, the Operation Manual and related materials.

## COUNT VII
### Accounting

80. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

81. Defendants' Franchise Agreement terminated on or about December 14, 2005.

82. Notwithstanding the termination of the Franchise Agreement, Defendants have continued to operate their retail store as a PostNet retail store.

83. Plaintiff, therefore, is entitled to and requests an accounting from Defendants of all revenue earned by Defendants' retail store since the date of the termination of the Franchise Agreement.

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) order Defendants to furnished Plaintiff with evidence of compliance with their obligation under the Franchise Agreement to cancel any assumed name or equivalent registration which contains the PostNet Marks;

(b) order Defendants to return to Plaintiff PostNet's Operating Manual and all other documents which contain confidential and proprietary information relating to the operation of the PostNet retail store;

(c) grant preliminary and permanent injunctive relief restraining and enjoining Defendants, until further order of this Court, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any person, persons, or legal entity, from continuing to operate the PostNet retail store located at 4590 Highway One, Rehoboth Beach, Delaware, and from owning, maintaining, advising, operating, engaging in, being employed by, making loans to, or having any interest in or relationship or association with a business which offers the same or similar products or services as those offered by PostNet retail stores, and which is located at that location or within a ten-mile radius of the Protected Territory;

(d) order Defendants to provide Plaintiff with an accounting of all revenue earned by Defendants' retail store since the date of the termination of the Franchise Agreement; and

  (e)  award Plaintiff all costs incurred in bringing this action, including reasonable attorneys' fees, pursuant to Section 15.8 of the Franchise Agreement.

Dated this 24th day of January, 2005.

        Respectfully submitted,

        JESTER & GIBSON, LLP


        _s/ Nancy Bauer Egelhoff_
        Nancy Bauer Egelhoff, Esq.
        Jay S. Jester, Esq.
        1875 Lawrence Street, Suite 740
        Denver, CO 80202
        Telephone: (303) 377-7888
        FAX: (303) 377-7075
        Email: nbegelhoff@jgllp.com
        Email: jjester@jgllp.com

        Barry M. Heller, Esq.
        DLA Piper Rudnick Gray Cary US LLP
        1775 Wiehle Avenue, Suite 400
        Reston, VA 20190-5159
        (703) 773-4000 (telephone)
        (703) 773-5000 (fax)

        Charley Sung, Esq.
        DLA Piper Rudnick Gray Cary US LLP
        1200 Nineteenth Street, NW
        Washington, DC 20036-2412
        (202) 861-3900 (telephone)
        (202) 223-2085 (fax)

        **ATTORNEYS FOR PLAINTIFF**
        **POSTNET INTERNATIONAL FRANCHISE**
        **CORPORATION**

<u>Plaintiff's Address</u>
1819 Wazee Street
Denver, Colorado 80202